# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1509 | **DATE** | 7/26/04 |
| **CASE TITLE** | | Vainder vs. Powell | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants defendants' motion for summary judgment (14-1) in part and denies it in part. Summary judgment is granted in favor of defendants Gallagher and Winnetka as to Counts 3 and 6 of plaintiff's complaint, and as a result Gallagher is dismissed as a defendant. Summary judgment is granted in favor of defendant Powell as to Count 5, as to Count 4 insofar as it asserts a claim under § 1983, and on plaintiff's claim regarding administration of the blood and urine tests. Defendant's motion is otherwise denied. Status hearing set to 8/2/04 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 0 4 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 30 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DANIEL H. VAINDER, a minor, )
by and through his parents, )
John Vainder and Bonnie Vainder, )
)
Plaintiff, )
)
vs. ) Case No. 03 C 1509
)
ROBIN POWELL, WILLIAM GALLAGHER, )
and VILLAGE OF WINNETKA, )
)
Defendants. )

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Daniel Vainder has sued Robin Powell, a police officer employed by the Village of Winnetka, Winnetka police chief William Gallagher, and the Village of Winnetka under 42 U.S.C. § 1983, alleging violations of his Fourth Amendment rights based on claims of false arrest and excessive force. Vainder's claims against Powell arise from his arrest by Powell on August 6, 2001 for driving under the influence of drugs and her alleged excessively tight application of handcuffs on Vainder's wrists. See Compl., Counts 1 & 2; Pltf's LR 56.1 Stmt. of Addl. Facts, Ex. 5 (copy of citations). Vainder has also made claims against Powell for malicious prosecution and violation of his right to counsel. See Compl., Counts 4 & 5. Vainder's claims against Gallagher and Winnetka are based on an alleged failure to train Powell and other officers on the arrest of persons suspected of driving under the influence and the use of handcuffs. See id., Counts 3 & 6. Vainder has also made a claim against Winnetka under an



Illinois statute requiring municipal entities to indemnify employees for torts committed within the scope of their employment. *See id.*, Count 7; 745 ILCS 10/9-102. At the time he filed suit, Vainder was just under eighteen years old, and thus his parents filed suit on his behalf. He is now nineteen years old and able to maintain suit in his own name.

The defendants have moved for entry of summary judgment on each of Vainder's claims. For the reasons stated below, the Court grants the motion in part and denies it in part.

## Discussion

In addressing a motion for summary judgment, the Court does not weigh the evidence or make credibility determinations; that is the province of the jury. Rather, the Court views the facts in the light most favorable to the non-moving party, drawing reasonable inferences in that party's favor, and determines only whether there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); Fed. R. Civ. P. 56(c). The facts as we recite them below are presented with this standard in mind.

Vainder turned sixteen in April 1985 and obtained a driver's license in early May of that year. About three months later, on the night of August 6, 2001, Vainder went to the beach in Winnetka with several friends and went for a swim in his boxer shorts. Vainder Dep. 24. Neither he nor any of those who accompanied him consumed any alcohol or drugs (though Vainder indicates that one other boy, who had come there separately, may have drunk some a beer). *Id.* 20, 26-28.

After swimming, Vainder put a pair of short pants over his still-wet boxer shorts and returned along with two male friends to his parents' car, a Jeep Cherokee, which he had parked

on a nearby street. *Id.* 24-25, 26. After he and his friends entered the car, Officer Powell pulled up across the street in her squad car. She told Vainder that he was subject to a $10 fine for being on the beach (presumably because it was after hours). She also advised Vainder that he was parked in a no-parking zone. Vainder replied "okay" and proceeded to start his car. Powell drove off in the opposite direction. *Id.* 42-45, 72-73.

Vainder drove to Tower Road, turned west, and proceeded to Sheridan Road, where he stopped at a stop sign. He then turned north on Sheridan, into or near an area called "the Ravines" (where Sheridan Road is characterized by sharp turns and rapid ascents and descents of hills) and traveled only about a half block when he observed a police car, which was coming in the opposite direction, pull around behind him and turn on its overhead lights. *Id.* 30-34. The police car was driven by Powell. Vainder pulled over.

Officer Powell, who was working alone, approached Powell's car. She told Vainder that he had been speeding and asked for his license and registration, which he produced. Powell testified that Vainder "eventually" produced the registration; she did not indicate any unusual or suspicious conduct on Vainder's part. Powell Dep. 71-72. From the license, Powell learned that Vainder was sixteen years old. *Id.* 77. Powell did not observe anything in the car indicative of alcohol or drug use. *Id.* 69. Nor had she observed Vainder driving erratically. *Id.* 62. She took Vainder's license and registration to her car. Vainder Dep. 56-57. Two other Winnetka police officers arrived around this time. Powell Dep. 66.

Powell then returned to Vainder's car and ordered him to get out. Vainder Dep. 57. Vainder complied. *Id.* 59. Either at this point or before taking his license, Powell told Vainder that she was a "drug specialist." After Vainder exited the car, Powell attempted to administer a

3

field sobriety test known as the "horizontal gaze nystagmus" (HGN) test. *Id.* 59-61, 64. To perform this test, the officer asks the driver to cover one eye and focus the other on an object at the driver's eye level. As the officer moves the object to the side, out of the driver's field of vision, the officer watches the driver's pupils to detect involuntary jerking, which supposedly may indicate that the driver is under the influence of alcohol or narcotics. *See, e.g., People v. Buening*, 229 Ill. App. 3d 538, 539-40, 592 N.E.2d 1222, 1223 (1992). This was the only test that Powell administered. Vainder Dep. 66.

While Powell was attempting to administer the HGN test, she shined a bright light directly into Vainder's eyes from a short distance. Vainder was unable to keep from blinking due to the light. Powell accused him of trying to evade the test; Vainder denies that he was doing so and says he told Powell that he would do the test. *Id.* 61-63, 65-66. Hoping to resolve the apparent misunderstanding, Vainder also offered to take a Breathalyzer test. *Id.* 63, 66. Shortly after this exchange, a male officer who had arrived at the scene patted Vainder down. During this process, the officers discovered that Vainder's pants were wet. *Id.* 68. Powell asked Vainder why, and he said he had urinated. *Id.* 71-72. (Vainder says this was untrue and that actually his pants were wet from swimming but that he lied because he was concerned about being fined for being on the beach after hours. *Id.* 72-73.) According to Vainder, Powell made a belittling comment and then placed Vainder under arrest for driving under the influence and handcuffed him. *Id.* 76-77, 96.

Vainder was taken to the Winnetka police station. On the way there, Vainder says, he was crying, and Powell continued to taunt him, saying things like, "Big boy, who's so tough now?" and "How are your parents going to think of you now?" *Id.* 82. At the station, Vainder

4

was first placed on a bench in a processing room, still handcuffed. *Id.* 83-84. At some point during this process, the male officer told Vainder that he knew Vainder had not really urinated in his pants, and Vainder confirmed that was so. *Id.* 84.

Powell told Vainder that he would have to undergo several tests to determine whether he was under the influence. Vainder says he "was more than ready to do that. I wanted to prove my innocence." *Id.* 85. He was given a Breathalyzer test for alcohol, which showed he had no alcohol in his system. *Id.* He was then fingerprinted and photographed, and during this process Powell continued to make taunting remarks to him. *Id.* 86. He was then taken, still handcuffed, to Evanston Hospital, where a sample of his blood was drawn and he gave a urine sample. *Id.* 87.

At some point while he was at the police station, Vainder's parents and a lawyer they knew arrived at the police station and asked to speak with Vainder.[1] Powell Dep. 101-02. Either Powell or another officer advised them that they could not speak with Vainder until after the booking process had been completed. *Id.* 107. All of this occurred before Vainder was taken to the hospital by Powell. *Id.* 108. The transfer to the hospital is claimed to have occurred without the knowledge of Vainder's parents or the attorney.

According to Vainder, Powell had applied the handcuffs too tight, and they were hurting his wrists. He says he complained to Powell about this both at the police station and later at the hospital, and asked her to loosen the handcuffs, but she refused, saying "That's too bad," and "Big boys can deal with it." Vainder Dep. 88-89. The handcuffs were not removed until after he

---

[1] At the direction of one of the police officers, one of Vainder's companions drove his car to Vainder's home, where he advised Vainder's parents of their son's arrest. Lau Dep. 48.

5

arrived at Evanston Hospital; the person who was to draw blood from Vainder said it would be too difficult to do so with his hands behind his back. *Id.* 89. The handcuffs were removed and then immediately put back on after blood was drawn. *Id.*

At some point during the process, Powell gave Vainder citations for speeding (34 miles per hour in a zone where the speed limit was 20, according to the citation) and for "driving under the influence - drugs." *See* Pltf's LR 56.1 Stmt. of Addl. Facts, Ex. 5 (copy of citations).[2]

Vainder was released after being in custody for several hours. The results of the testing of Vainder's blood, which were received by the police on some date after his release, were negative for both alcohol and drugs. Powell Dep. 173-74. Both of the charges against Vainder were eventually dropped by the prosecuting attorney. This lawsuit followed.

## 1. False arrest claim

Defendants argue that the uncontradicted evidence establishes as a matter of law that Powell had probable cause to arrest Vainder. Probable cause to arrest exists if "at the moment the arrest was made ... the facts and circumstances within [the arresting officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent [person] is believing" that the arrestee had violated the law. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964); internal quotation marks omitted).

A violation of traffic laws, like the prohibition against exceeding a speed limit, can justify a full custodial arrest even if the violation is punishable only by a fine. *Atwater v. City of Lago*

---

[2] It appears from the citation that Powell cited Vainder only for driving under the influence of drugs, not for driving under the influence of alcohol.

*Vista*, 532 U.S. 318 (2000). Powell says that she tracked Vainder with a radar gun which showed he was traveling at 34 miles per hour. If this were undisputed, it might be argued that it justified Vainder's subsequent arrest. But defendants do not make this argument, and in any event Vainder's speed *is* genuinely disputed. There is no record of what the radar gun showed; all we have is Powell's testimony about what it showed. She and Vainder have given accounts of their encounter which are diametrically opposed in certain important respects. If a jury were to credit Vainder's account – and at this stage of the case, the Court must assume it would – it reasonably could doubt Powell's veracity. In addition, though Vainder was somewhat vague at his deposition regarding his actual speed, he flatly denied traveling 34 miles per hour. Vainder Dep. 39. His testimony, read fairly and in the light most favorable to him, reflects that he claims he was not exceeding the speed limit and could not have done so, in light of the nature of the road on which he was traveling and the fact that he had gone only one-half block after stopping at a stop sign. *Id.* 31, 36, 38, 39. (One of Vainder's companions in the car also denied that Vainder was speeding, though this was evidently based on his feel for how fast the car was going, as he could not see the speedometer. Hearn Dep. 26.) In sum, because Vainder's speed is genuinely disputed, Powell's claim about how fast he was going cannot serve as a basis for summary judgment on the false arrest claim.

In both their motion and at oral argument, the defendants relied on a series of circumstances that they contend Vainder admitted and that, they argued, add up to probable cause to arrest him for driving under the influence. They say that Vainder admitted fumbling while looking for the vehicle registration, admitted being nervous, admitted speaking rapidly, and admitted he was unable to comply with the HGN test. *See* Vainder Dep. 54, 57, 58, 62.

Defendants also rely on three alleged statements by Vainder. First, Vainder testified that after he gave Powell his driver's license, he says, she asked whether he had consumed any illegal substances. Vainder, who claims to have been stunned by the question, says he initially replied, "What would happen if I had?" Powell then repeated her question, and Vainder immediately replied that he had not used any illegal substances. *Id.* 54-55. Second, as indicated earlier, after Powell called to Vainder's attention that the front of his pants were wet, he replied that he had urinated. Powell Dep. 74-75. Third, Vainder said that when he had difficulty keeping his eyes open due to the flashlight when Powell was conducting the HGN test, Powell asked whether he was refusing to complete the test, and he initially replied, "what happens if I refuse?" (Vainder testified, however, that Powell then repeated the question and he agreed to try to complete the test.) Vainder Dep. 61-63. Defendants say that these statements reasonably indicated that Vainder was intoxicated and/or conscious that compliance might incriminate him.

Interestingly, Powell does not claim to have relied on any of these statements or inquiries by Vainder in determining to arrest him. At her deposition, Powell was asked what information she had that added up to probable cause:

> Q: Prior to placing him under arrest, did you develop probable cause to believe he had committed a crime?
>
> A: Yes.
>
> Q: What were the observations that you made that established probable cause?
>
> A: Observations were a red, flushed face. Staring straight ahead. Clenched fists. Uncontrollable twitching of the arms. Red, bloodshot eyes. Eyelids drooping.
>
> Q: When did you make these observations?

8

A: While he was sitting in the vehicle.

Q: When you asked him to get out and take the field sobriety test, did you make any – during the field sobriety test, did you make any other additional observations that supported the probable cause?

A: He had nystagmus of the eyes as well as the pupils were not reacting to the light very well. They were sluggish to react. The lids were drooping. He would not keep his eyes open. In my opinion, he kept trying to cause problems with the testing so I couldn't get a good reading.

Q: What type of reading were you trying to get?

A: Trying to make sure the pupils would react correctly to the light. His pupils were not reacting correctly. They were very sluggish to react making me think there is something more inside of the system causing the problem. I didn't smell any alcohol. Alcohol was not what I was looking for at that point.

Q: What do you mean by "reacting to the light." Describe that whole process.

A: They are supposed to pick a point over my shoulder. Stare at it. Keep the eyes open wide enough. I put a light at the corner of their eyes.

Q: What are you looking for?

A: For the pupil reaction. When you add light to someone's eyes, their pupils should become restricted and then bounce back after you take the light away. His did not do that. They were slow to go back to the size they should be in the dark.

Powell Dep. 181-83. (Defendants do not argue that the constellation of facts upon which Powell says she relied entitles them to summary judgment, presumably because most of them are dependent on an assessment of Powell's credibility in her rendition of Vainder's physical appearance.)

Powell argues that based on the seven facts recited earlier or, at least, the last three items – Vainder's two questions and his statement about his wet pants – probable cause to arrest

Vainder for driving under the influence existed, and summary judgment should be entered. But that reflects a misunderstanding of the nature of our inquiry. The probable cause inquiry is not a species of law-school hypothetical in which one searches the record to see whether there are facts that, if known to an imaginary omniscient officer, would add up to probable cause. It is true that the arresting officer's subjective assessment of the legal significance of the facts is not controlling; the test is an objective one. *See, e.g., Ochana v. Flores*, 347 F.32d 266, 272 (7th Cir. 2003); *see generally Whren v. United States*, 517 U.S. 806, 813 (1996). But that said, *Hunter v. Bryant* makes it clear that the determination of whether probable cause existed must be based on "the facts and circumstances within [the officer's] knowledge." *Hunter*, 502 U.S. at 228.

The fact that Vainder says something occurred does not mean Powell was aware of it; it is Powell's knowledge that counts. There is no indication from Powell's extensive deposition testimony that she heard Vainder ask what would happen if he had been using an illegal substance (she testified only that he denied drinking or using drugs, Powell Dep. 97) or what would happen if he did not complete the HGN test. As we have indicated, the fact that Powell did not use these statements to determine probable cause is not controlling in determining whether probable cause actually existed. *See, e.g., Ochana*, 347 F.3d at 272. But Powell's failure to identify these statements in her deposition, and her omission of them in describing what she relied on, gives rise to a reasonable inference that she did not hear Vainder's statements. Because the present record does not support a finding that these circumstances were known to Powell (let alone that her knowledge of these facts is undisputed), they cannot be the basis for a grant of summary judgment.

Powell did hear Vainder make the comment about urinating in his pants. Powell Dep. 74-

10

75. But defendants have provided no evidence supporting the inference they propose – that this circumstance is indicative of driving under the influence. Powell certainly did not say as much in her deposition. *See id.* 74-77. One might think this circumstance was suggestive not of intoxication, but rather of the nervousness one would expect of a new, sixteen year old driver pulled over by the police after dark. Indeed, a reasonable inference can be drawn that this is what a reasonable officer would have believed; recall that Powell did not claim to have relied on the purported urination in arresting Vainder. Powell Dep. 181-83. Even were that not the case, Vainder also testified that Powell's fellow officer later conceded he knew that Vainder had not actually urinated. Vainder Dep. 84. One can reasonably infer from the evidence that a reasonable officer would not have considered Vainder's statement reliable, and only reasonably trustworthy information can be used to establish probable cause. *See, e.g., Beck,* 379 U.S. at 91; *Sheikh-Abdi v. McClellan,* 37 F.3d 1240, 1246 (7th Cir. 1994).

Several of the other facts relied upon by defendants likewise cannot appropriately be considered on the present record as entitling them to summary judgment on the false arrest claim. First, Powell did not testify that Vainder fumbled for the vehicle registration; all she said was that he eventually produced it. Powell Dep. 71-72. What is relevant is what is known to the officer, and Powell evidently did not perceive Vainder as having done anything unusual or suspicious in this regard. Second, Powell did not testify that Vainder was nervous or speaking rapidly. Though Vainder and his companions said he was nervous, their perception is not controlling, and perhaps not even relevant; what is relevant is what the arresting officer saw and heard.

This brings us, finally, to the last of the purportedly undisputed factors upon which defendants rely, namely Vainder's supposed inability or unwillingness to complete the HGN test.

11

The record, however, is susceptible of an inference that Powell harbored some animosity toward Vainder, as reflected by the taunting and pejorative comments that Vainder says she made to him, and there is likewise evidence (namely Vainder's testimony) that Powell shined a bright flashlight directly into his eyes from up close rather than into "the corner" of his eyes as she testified the test is supposed to be performed. Powell Dep. 183. On the present record, a jury reasonably could infer that Powell conducted the test in such a way that she could not reasonably expect Vainder to be able to comply. A jury that made such an inference reasonably could find that Vainder's performance on the HGN test did not contribute to a finding of probable cause.

The Court has discussed separately each of the seven supposedly undisputed facts relied upon by the defendants in their motion because that is the only practical way to discuss them. We recognize, of course, that it is the totality of the circumstances that counts; facts which by themselves may mean nothing may, when combined with other circumstances, add up to probable cause. But what the undisputed facts show in their totality likewise is reasonably disputed in this case. Of the seven facts or circumstances argued by the defendants in their motion, a reasonable jury could find that Powell was unaware of five of them and that the other two do not add up to probable cause. For this reason, defendants are not entitled to summary judgment on the question of probable cause to arrest. The fact that the determination of probable cause is an objective one does not make it any less a factual inquiry. The resolution of whether probable cause existed "typically falls within the province of the jury," and a determination by a court that probable cause existed as a matter of law is appropriate only "when there is no room for difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sheikh-Abdi*, 37 F.3d at 1246. Such is not the case here.

Powell also argues that she is entitled to qualified immunity on the false arrest claim. Her argument in this regard amounts to an afterthought and is not well developed, *see* Dfdts' Summ. Judg. Mtn. at 14-15, but we will nonetheless consider it. To determine whether a municipal official is entitled to qualified immunity from suit, a court considers first whether the officer violated the plaintiff's rights, and second whether the particular right was clearly established at the time of the violation. *See, e.g., Saucier v. Katz*, 533 U.S. 194 (2001); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998). The first question requires the Court to ask whether the facts, "taken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. The answer to that question is plainly yes. In the false arrest context, an officer is entitled to qualified immunity from suit if a reasonable officer in the defendant's position could have mistakenly believed that probable cause existed. *See Hunter*, 502 U.S. at 227. This is sometimes referred to as "'arguable' probable cause." *See, e.g., Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). But because there are genuine disputes over what facts Powell knew and over the inferences to be drawn from the conduct of the HGN test, summary judgment on the basis of "arguable probable cause" is also inappropriate. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1000 (7th Cir. 2003). "Because the facts are in hot dispute, the officers cannot seek pretrial refuge behind a claim of qualified immunity." *Dufour-Dowell v. Cogger*, 152 F.3d 678, 680 (7th Cir. 1998) (excessive force case).

## 2. Excessive force claim

Defendants have also moved for summary judgment on Vainder's excessive force claim regarding the allegedly too-tight application of the handcuffs. Vainder contends the handcuffs

were applied so tightly as to cause bruising, Vainder Dep. 117, and as noted earlier he testified that he asked Powell to loosen him but she responded only by taunting him. Defendants argue that allegations of this type do not give rise to a claim under § 1983, but for this they rely only on district court decisions, none more recent than 1998, *see* Dfdts' Summ. Judg. Mem. at 8, without citing the Seventh Circuit's more recent treatment of the issue in *Payne v. Pauley*, 337 F.3d 767, 779-80 (7th Cir. 2003) and *Herzog v. Village of Winnetka*, 309 F.3d 1041, 1043 (7th Cir. 2002), the latter of which the defendants did not acknowledge in their brief even though it involved not only Winnetka but Officer Powell. In those cases, the court made it clear that a claim of excessively tight handcuffing can give rise to a claim under § 1983 for unreasonable seizure even without serious injury, at least if the arrest was illegal in the first place and the plaintiff asked to have the handcuffs loosened. Vainder's claim fits neatly within the category of claims the Seventh Circuit has approved, and it is not governed by *Braun v. Baldwin*, 346 F.3d 761, 763 (7th Cir. 2003), in which the court suggested, in passing, that a claim regarding too-tight handcuffs without an allegation of improper arrest is legally insufficient. For this reason, defendants are not entitled to summary judgment on Count 2.

Vainder also contends that his Fourth Amendment rights were violated by the administration of the blood and urine tests at Evanston Hospital. Though it is not clear to the Court whether this is part of his false arrest claim or his excessive force claim, we will address it here. It is undisputed that Vainder consented to the tests. Vainder argues that his consent was invalid, either because it was coerced or because it consisted only of submission to a claim of lawful authority. The Court agrees with defendants that Vainder has failed to show that a genuine issue of fact exists in this regard. In his response to defendants' statement of undisputed

14

facts submitted pursuant to Local Rule 56.1, Vainder admitted the truth of the following statement:

> 71. Powell informed plaintiff that she was going to perform several tests to determine whether he was under the influence. Plaintiff was more than ready to do that because he wanted to prove his innocence. (Vainder Deposition at page 85).

Pltf's LR 56.1 Resp. ¶ 71. Though Vainder testified Powell never specifically asked him if he would agree to have his blood drawn, *see* Vainder Dep. 89, he went on to testify that he "never objected," and when asked, "Did you ever consent to it?" he replied, "Once I was at the hospital, never prior." *Id.* 90. Under the circumstances, no reasonable jury could find that Vainder's consent was either coerced or consisted merely of acquiescence.

The Court also notes, parenthetically, that even if Vainder's consent to the tests could be claimed to be less than fully voluntary, it is difficult to see how he was harmed by the administration of the tests. As indicated earlier, Vainder appears to have been charged not with driving while intoxicated by alcohol, but rather with driving while intoxicated by drugs. Thus passing the Breathalyzer test did not get him off the hook. As best as the Court can tell, it was the results of the very blood and urine tests that he attacks that led to the dismissal of the charges against him.

Finally, because Vainder was not required to urinate in Powell's presence – he was permitted to turn his back to her – he cannot maintain a claim under the Fourth Amendment regarding the manner in which that test was administered. *See generally Herzog*, 309 F.3d at 1044.

3. **Claim of denial of right to counsel**

The police do not violate a suspect's Sixth Amendment rights by failing to inform him that counsel is present and asking to see him. *Moran v. Burbine*, 475 U.S. 412 (1986). In this case there is no claim that Vainder requested counsel. Illinois' rule is broader than the federal constitutional rule; in *People v. McCauley*, 163 Ill. 2d 414, 645 N.E.2d 923 (1994), the Illinois Supreme Court held that a person's rights under the Illinois Constitution's due process clause are violated when the police fail to advise a suspect that an attorney retained by his family is present and asking to see him. It may be that this state-law right was violated by Powell, but even if so that does not entitle Vainder to relief under § 1983, which requires proof of a violation of the plaintiff's federal constitutional rights. *See, e.g., White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995). The Court does not understand Vainder to be making a state-law claim in this regard, and in any event he cites no authority for the proposition that a cause of action for damages exists under Illinois law for violation of a person's rights under *McCauley*. The defendants are therefore entitled to summary judgment on Count 5.

### 4. Malicious prosecution claim

In this Circuit, a claim of malicious prosecution does not amount to a denial of a federal constitutional right. *See Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001). Thus defendants are entitled to summary judgment on Count 4 to the extent it asserts a claim under federal law. Vainder may, however, be entitled to pursue a state law malicious prosecution claim, and thus the Court will not dismiss Count 4 insofar as it alleges malicious prosecution under Illinois law.

### 5. Claims against Gallagher

An individual like Gallagher is liable under § 1983 only if he participated directly in the

constitutional violation; "Section 1983 creates a cause of action based on personal liability and predicated upon fault." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). A supervisor satisfies the personal responsibility requirement "'if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery.'" *Hildebrandt v. Ill. Dep't of Nat'l Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (internal quotation marks and citations omitted)).

Vainder has failed to offer evidence from which a reasonable jury could find Gallagher liable under this standard. In the section of his response to the motion for summary judgment that addresses Gallagher's liability, Vainder discusses only the way he was treated at the police station (specifically, during the booking process), so the Court will consider his claim as limited to that context. *See* Pltf's Summ. Judg. Resp. 27-28. The Court has already ruled that Vainder cannot maintain a § 1983 claim based on the alleged denial of access to counsel. Vainder also relies on Powell's alleged refusal to let his parents to see him while he was in custody. But a juvenile has no independent federal constitutional right of access to his parents while in custody. Rather, the denial of access to one's parents is a component of the inquiry into whether an inculpatory statement given by the juvenile while in custody was given voluntarily. *See A.M. v. Butler*, 360 F.3d 787, 799-800 (7th Cir. 2004); *see generally Fare v. Michael C.*, 442 U.S. 707, 725 (1979); *In re Gault*, 387 U.S. 1, 45 (1967). Even in the context of a confession, there is no *per se* federal rule that the denial of a juvenile's access to his parents renders a subsequent

17

confession involuntary. *Hardaway v. Young*, 302 F.3d 757, 764-65 (7th Cir. 2002). In this case there is no claim that Vainder was questioned, either before or after his parents asked to see him. Under the circumstances, there is no basis for a § 1983 claim against any of the defendants (including Gallagher) for the alleged denial of access.

Though it is not entirely clear from Vainder's response to the summary judgment motion, he may also be contending that Powell's alleged excessive tightening of the handcuffs on Vainder is attributable to Gallagher. Vainder has failed to identify any evidence from which a jury could conclude that Gallagher either approved, condoned, or turned a blind eye to such conduct. Vainder points to Gallagher's awareness of earlier incidents involving Powell and male prisoners, *see* Pltf's Summ. Judg. Resp. at 7, 28, but he does not claim that any of those incidents involved improper handcuffing. Under the circumstances, Vainder cannot maintain a claim under § 1983 against Gallagher based on the alleged mistreatment at the Winnetka police station.

With regard to the state law malicious prosecution claim, because Vainder does not allege any involvement by Gallagher in the allegedly unwarranted prosecution, he cannot maintain that particular claim against Gallagher.

### 6. Claims against Winnetka

A plaintiff may maintain a claim against a municipal entity under § 1983 only when the injury results from a policy or custom of the municipality itself; there is no *respondeat superior* liability under § 1983. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). In his response to the motion for summary judgment, Vainder defines his claim against Winnetka solely by reference to Gallagher's conduct as the alleged policymaking official in Winnetka regarding police handling of arrestees. *See* Pltf's Summ. Judg. Resp. at 27. The

18

Court's determination that Vainder cannot maintain a claim against Gallagher for his own actions is thus fatal to Vainder's § 1983 claim against Winnetka based on Gallagher's actions.

Vainder may, however, continue to pursue his indemnification claim against Winnetka under 745 ILCS 10/9-102 with regard to his claims against Powell that have survived summary judgment. *See generally Wilson v. City of Chicago,* 120 F.3d 681, 684-86 (7th Cir. 1997).

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment [docket # 14-1] in part and denies it in part. Summary judgment is granted in favor of defendants Gallagher and Winnetka as to Counts 3 and 6 of plaintiff's complaint, and as a result Gallagher is dismissed as a defendant. Summary judgment is granted in favor of defendant Powell as to Count 5, as to Count 4 insofar as it asserts a claim under § 1983, and on plaintiff's claim regarding administration of the blood and urine tests. Defendants' motion is otherwise denied. The case is set for a status hearing on August 2, 2004 at 9:30 a.m. for the purpose of setting a date for filing the final pretrial order and, possibly, resetting the trial date due to a conflict in the Court's trial schedule. Trial counsel are ordered to appear.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 26, 2004